**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4957**

UNITED STATES OF AMERICA,

         Plaintiff - Appellee,

   v.

BARRY WEST,

         Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Chief District Judge. (3:07-cr-00185)

Submitted: September 30, 2008    Decided: December 17, 2008

Before MOTZ, KING, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

David R. Lett, Richmond, Virginia, for Appellant. Chuck Rosenburg, United States Attorney. Laura Colombell Marshall, Assistant United States Attorney, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Barry West appeals his conviction for witness tampering through use of force, 18 U.S.C. § 1512(a)(2)(A) (2000). West claims that the evidence was insufficient to convict him. We affirm.

I

At trial, Craig Coles testified that Letrista West, Barry West's sister, was charged with identity theft. Prior to Letrista's trial, Barry West told Coles that he should let Letrista handle the charge against her. Coles took the comment to mean that he should not discuss the identity theft matter with the police.

On the day of Letrista's trial, Coles and Barry West ran into each other in a hallway of the federal courthouse. As West approached Coles, the following exchange took place:

COLES:    Hey, what's up, Barry?

WEST:     My motherfucking sister is what's up.

COLES:    I don't have nothing to do with your sister.
          . . .

WEST:     You got something to do with her. She did this
          shit herself?

COLES:    I didn't have nothing to do with your sister. If
          she is a thief, she is a thief.

WEST:     We're going to see who gets the last laugh.
          I'll fuck you up.

2

Coles testified that during this conversation, West was so close to him that "I could have puckered my lips and kissed him." Coles felt that there was a real possibility that West would hit him. Once the men separated, Coles testified that West shook his head "and then he [gestured] as if he was going to cut my neck."

Coles' mother, who witnessed the confrontation, testified that she feared that West would strike her son. She rushed to a nearby courtroom for assistance. A court security officer testified that the two men were toe-to-toe in the hallway. Another witness testified that West was leaning towards Coles, who appeared frightened.

## II

We must determine whether the evidence, viewed in the light most favorable to the Government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Stewart, 256 F.3d 231, 250 (4th Cir. 2001). If substantial evidence exists to support a verdict, we must sustain it. Glasser, 315 U.S. at 80. We do not review the credibility of witnesses, and we assume that the jury resolved all contradictions in the testimony in favor of the Government. United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002).

To establish a violation of witness tampering under § 1512(a)(2)(A), the United States had to prove that: (1) West used physical force or the threat of physical force; (2) with the intent of curtailing Coles' involvement in Letrista West's prosecution. See United States v. England, 507 F.3d 581, 588 (7th Cir. 2007). "[T]he statute prohibits expressing an intent to inflict injury on another through physical force." Id. at 589. The threat must objectively have a "reasonable tendency to intimidate," and only "true threats" are punished under the statute. Id.

Viewing the testimony in the light most favorable to the Government, a rational jury could have convicted West. Prior to the incident in the courthouse, West suggested to Coles that he should not cooperate with police in the investigation of Letrista. Coles was subpoenaed as a Government witness at Letrista's trial, and his name was on the Government's witness list. It is logical to infer that West knew that Coles was scheduled to testify against his sister. West was clearly the aggressor during the confrontation with Coles at the courthouse. Finally, his statements to West and his making a cutting motion across his neck clearly were threatening and reasonably could be viewed as intended to intimidate Coles so that he would not testify.

4

III

We accordingly affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED