**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4711**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LLOYD MALLORY,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:09-cr-00228-TSE-2)

Argued:  October 25, 2011          Decided:  January 19, 2012

Before MOTZ, KING, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Barry Coburn, COBURN & COFFMAN, PLLC, Washington, D.C., for Appellant.  Michael John Frank, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A grand jury charged Lloyd Mallory and two co-conspirators, Michael Milan and Chris Evans, in a twelve-count superseding indictment. It charged Mallory specifically with the following three counts: wire fraud, in violation of 18 U.S.C. § 1343; mail fraud, in violation of 18 U.S.C. § 1341; and conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349. Mallory exercised his right to a trial by jury. At its conclusion, the jury found Mallory guilty of mail fraud and conspiracy to commit wire and mail fraud, but acquitted him of wire fraud. The district court made a downward variance and sentenced Mallory to 60 months' imprisonment for each count of his conviction, with the sentences to run concurrently. The court also entered a restitution order for the amount of loss. Mallory filed a timely appeal, raising six alleged errors. For the reasons explained below, we affirm.

I.

The jury convicted Mallory, a certified public accountant (CPA), of participating in a conspiracy between the fall of 2006 and June 2008 to defraud various money lenders by causing them to issue mortgage loans to unqualified home buyers. Mallory did this by producing fraudulent documents that supported false claims about the borrowers' employment and income. The evidence

educed at trial established that Mallory drafted fraudulent tax returns, W-2 forms, and CPA letters to convince the lenders to issue the bad loans.

Melanie Eckstrom, a mortgage processor and one of the government's witnesses at trial, testified that she was part of the scheme. Eckstrom was a mortgage processor at two mortgage brokerages, Congressional Funding and Preferred Choice Mortgage. As a part of her duties, Eckstrom prepared mortgage applications and collected the documents lenders require to determine whether to issue a loan, including such items as tax returns and W-2 statements. According to the testimony at trial, every loan that Eckstrom processed was fraudulent in some manner.

During the relevant time period, Milan, Mallory's co-conspirator, was a mortgage broker for Congressional Funding and, starting in October 2007, Preferred Choice Mortgage. Among other things, mortgage brokers assist would-be borrowers in completing the lender's mortgage application. A mortgage broker is paid in two ways: by the lender, when the loan is approved, and by the borrower, when points are charged.

Eckstrom and Milan had an arrangement with Mallory whereby Mallory would create fraudulent documents. During the relevant time period, Eckstrom, Milan, and a phantom company created by Milan, cleverly named "Phantom Financial, LLC," received over $100,000 in commissions.

Initially, Mallory was charged alongside co-conspirators Milan and Evans. Milan and Evans, however, pled guilty before trial.

At trial, Mallory testified in his own defense. Although he acknowledged that he drafted the documents at issue, he asserted that he did not know they were being used for an unlawful purpose. Moreover, Mallory maintained that the false tax returns that he compiled were for the purpose of exploring potential tax strategies.

Following a five-day trial, the court convicted Mallory of mail fraud and conspiracy to commit wire and mail fraud, but acquitted him of wire fraud. The district court sentenced him to 60 months' imprisonment for each count of his conviction, to run concurrently. The court also entered a restitution order for the amount of loss. Mallory filed a timely appeal.

II.

Mallory first argues that the district court committed reversible error by asking impermissible questions of Eckstrom during the trial regarding Mallory's state of mind. Because Mallory failed to object to the questioning at trial, we review only for plain error. See United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010). To demonstrate plain error, a defendant must establish (1) that the trial court erred, (2) that the

error is clear and obvious, and (3) that the error affected his substantial rights. United States v. Olano, 507 U.S. 725, 732-34 (1993). Nevertheless, even if this burden is met, we have discretion whether to recognize the error, and we will not do so unless "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (alteration in original) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)) (internal quotation marks omitted).

The questioning at issue occurred during Eckstrom's testimony regarding Mallory's role in the mortgage fraud scheme. Specifically, the district court inquired into Mallory's knowledge regarding the false tax returns. Mallory argues that the district court improperly asked Eckstrom about Mallory's state of mind. The testimony Mallory finds objectionable is as follows:

> Eckstrom: [Mallory] was preparing fraudulent tax returns for us.
> Court:    Did he know they were false?
> Eckstrom: Yes.
> Court:    How?  How do you know that?
> Eckstrom: I guess I really can't say how.  I mean—

Questioning by the district court is plainly permissible. See Fed. R. Evid. 614. The court must not, however, "give . . . the appearance of bias or partiality in any way or become . . . so pervasive in his interruptions and interrogations that he may appear to usurp the role of either the prosecutor or the

5

defendant's counsel." United States v. Wilson, 135 F.3d 291, 307 (4th Cir. 1998) (omissions in original) (quoting United States v. Parodi, 703 F.2d 768, 776 (4th Cir. 1983)) (internal quotation marks omitted).

Assuming, without deciding, that the district court improperly questioned Eckstrom as to Mallory's state of mind, we are unable to say that the questioning prejudiced Mallory. To the extent that the district court improperly caused Eckstrom to testify that Mallory knew that the tax returns were false, it mitigated the error by following up with a question about how she knew. She replied, "I guess I really can't say how."

Moreover, the district court ameliorated any error in its questioning by giving the following instruction to the jury:

> Now, during the course of the trial I occasionally asked questions of a witness. Do not assume that I hold any opinion on the matters to which my questions may have related. The Court asked questions simply to clarify matters, not to help one side of the case or hurt the other.

As such, neither the fairness, integrity, or public reputation of the proceedings nor Mallory's substantial rights were affected. Hence, we find no reversible error.

III.

Mallory next contends that the district court erred in admitting into evidence a certification of business record,

6

which the government relied upon in introducing a Federal Express (FedEx) tracking record into evidence. The tracking record helped establish the mail fraud charge against Mallory. According to Mallory, this admission violated his right to confront the witnesses against him as guaranteed by the Sixth Amendment. We review this issue de novo. United States v. Williams, 632 F.3d 129, 132 (4th Cir. 2011).

The certification of business record was offered pursuant to Federal Rule of Evidence 902(11) and signed under penalty of perjury by a FedEx records custodian. In the certification, the records custodian declared the following:

> [T]he documents are original records or true copies of records that were:
>
> 1. made at or near the time of the occurrence of the matters described in the documents, by (or from information transmitted by) a person with knowledge of those matters;
>
> 2. kept in the course of regularly conducted business activity; and
>
> 3. made by the said business activity as a regular practice.

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court made clear that the right of confrontation covers all testimonial "statements that declarants would reasonably expect to be used prosecutorily." Id. at 51. (internal quotation marks omitted). To be considered testimonial, the primary purpose of the statement must be "to establish or prove past events

7

potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006). Business records are generally admissible, even without confrontation. Bullcoming v. New Mexico, 131 S. Ct. 2705, 2714 n.6 (2011). "[H]aving been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial— they are not testimonial." Id. (quoting Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2539-40 (2009)) (internal quotation marks omitted).

It is beyond dispute that the FedEx tracking record was not created "for the purpose of establishing or proving some fact at trial." Id. Thus, as was uncontested below, it was not testimonial and was not subject to confrontation.

The certification of business record was, however, created for the sole purpose of use at trial. Thus, we must consider whether its admission violated Mallory's Confrontation Clause rights. In Melendez-Diaz, the Supreme Court described the difference between an affidavit that is created for the purpose of providing evidence against a defendant and an affidavit created for the purpose of authenticating an admissible record. It stated, "A clerk could by affidavit authenticate or provide a copy of an otherwise admissible record, but could not . . . create a record for the sole purpose of providing evidence against a defendant." Melendez-Diaz, 129 S. Ct. at 2539.

8

Moreover, the majority dismissed the dissent's fear that its holding would disrupt the long-accepted practice of authenticating documents pursuant to Rule 902(11): "Contrary to the dissent's suggestion, we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the . . . authenticity of the sample . . . must appear in person as part of the prosecution's case." Id. at 2532 n.1 (citation omitted).

Consequently, Melendez-Diaz makes clear that the Sixth Amendment right to confront witnesses does not include the right to confront a records custodian who submits a Rule 902(11) certification of a record that was created in the course of a regularly conducted business activity. Because the certification does not trigger the Confrontation Clause, we are unable to find a constitutional violation here.


IV.

Mallory next avers that there is insufficient evidence to support his convictions. A defendant who challenges the sufficiency of the evidence faces a "heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting United States v. Hoyle, 51 F.3d 1239, 1245 (4th Cir. 1995)) (internal quotation marks omitted). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence

9

should be 'confined to cases where the prosecution's failure is clear.'" United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)). The jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). We review the record in the light most favorable to the government in determining whether there is substantial evidence to support the conviction. United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir. 2011). Circumstantial as well as direct evidence is considered, and the government is allowed "the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). In evaluating the sufficiency of the evidence, we do not review the credibility of the witnesses and we "assume that the jury resolved all contradictions [in the testimony] in favor of the government." United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998) (quoting United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993)) (internal quotation marks omitted).

## A.

As to his sufficiency of the evidence claim, Mallory first avers that the government failed to prove that he used the

United Postal Service or another interstate carrier for the purpose of executing his fraudulent scheme. Pursuant to 18 U.S.C. § 1341, to prove mail fraud the government is required to establish that the defendant (1) knowingly participated in a scheme to defraud and (2) used the mail or another interstate carrier for the purpose of executing such scheme. United States v. Delfino, 510 F.3d 468, 471 (4th Cir. 2007).

Mallory contends that the government failed to present substantial evidence as to whether FedEx is such an interstate carrier. For the reasons set forth in the district court's comprehensive and well-reasoned order on this issue, we affirm. See Order, United States v. Mallory, No. 1:09cr228 (E.D. Va. May 13, 2010), ECF No. 225.


B.

Mallory's second sufficiency of the evidence claim is that the government failed to put forth any evidence proving that he had the requisite knowledge that the documents he created were false, that he harbored any specific fraudulent intent in crafting them, or that he knew that the documents were being used for an unlawful purpose. Moreover, according to Mallory, the government neglected to present expert testimony to establish that the information he relied on to draft the

11

documents he produced was inadequate from an accounting perspective.

Quite simply, the evidence of Mallory's knowledge of the falsity of the documents that he produced, his knowledge of their unlawful use, and his fraudulent intent is not only substantial, it is overwhelming. The documentary evidence alone establishes his knowledge and fraudulent intent. At trial, the government presented false tax returns, fraudulent CPA letters, and fake W-2 forms that Mallory prepared, which showed his intent and knowledge. It also presented emails that demonstrated the same. In addition, there was testimony at trial that Mallory knowingly created the false documents.

Moreover, Mallory testified at trial that he was unaware that the documents he prepared were being used for an unlawful purpose. The jury, however, disbelieved his testimony. That the jury found his testimony implausible may constitute additional evidence in support of Mallory's conviction. See United States v. Burgos, 94 F.3d 849, 868 (4th Cir. 1996) ("[T]he jury evidently believed [the defendant] perjured himself. . . . [H]is perjured testimony could have been viewed as affirmative evidence of his guilt. Thus, [the defendant's] lying on the stand may have aided in establishing the fact that he was guilty."); United States v. Bennett, 848 F.2d 1134, 1139 (11th Cir. 1988) ("By choosing to present a defense the

12

[defendants] incurred the risk that they might bolster the government's case. Indeed, this court has held that a defendant's implausible explanation may constitute positive evidence in support of a jury verdict.").

We disagree with Mallory's contention that the government was required to present expert testimony to establish that the information he relied on to draft the documents he created was insufficient from an accounting perspective. It suffices to say that there is no requirement that the government present expert testimony on this matter.

V.

According to Mallory, the district court violated his rights pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, in that the record fails to establish that the court conducted the requisite balancing test when deciding whether to grant three requests for a continuance. In considering Speedy Trial Act arguments, we review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Kellam, 568 F.3d 125, 132 (4th Cir. 2009).

The Act requires that a criminal trial begin within seventy days of the filing of an information or indictment, or of the defendant's initial appearance, whichever occurs later. § 3161(c)(1). To afford courts some flexibility in scheduling

13

trials, however, the Act provides that certain periods of delay may be excluded from the seventy-day computation. As is applicable in Mallory's case, § 3161(h)(7)(A) excludes from the seventy-day computation those delays in which the district court finds "that the ends of justice served by granting [a] continuance outweigh the public's and defendant's interests in a speedy trial." Zedner v. United States, 547 U.S. 489, 498–99 (2006).

The Act lists several factors that the district court must consider when making the "ends of justice" assessment required by § 3161(h)(7)(A), including whether the defendant needs reasonable time to obtain counsel, whether counsel needs additional time for effective preparation of the case, and whether delay is necessary to ensure continuity of counsel. § 3161(h)(7)(B)(iv). The Act also makes clear that the district court is not to grant a continuance because of a "lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the [g]overnment." § 3161(h)(7)(C).

Before a delay can be considered excludable from the seventy-day computation, the district court must explain, "either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a

14

speedy trial." § 3161(h)(7)(A). The district court is required to state its findings on the record by the time it rules on the defendant's motion to dismiss. Zedner, 547 U.S. at 506–07. It also must be "clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." United States v. Henry, 538 F.3d 300, 304 (4th Cir. 2008) (quoting United States v. Keith, 42 F.3d 234, 237 (4th Cir. 1994)) (internal quotation marks omitted). If a district court fails to state its findings on the record, then the delay is not excludable under the Act. Zedner, 547 U.S. at 507.

The district court granted three continuances before the case finally went to trial. Regarding the first continuance, Mallory, along with his co-defendants, Milan and Evans, requested a six-month continuance on the basis of the large amount of discovery associated with the case. After consideration of the request, the district court found the request excessive and granted a continuance of four months instead.

A little over two months later, counsel for Milan requested a second continuance. In argument to the district court, Milan's counsel sought an additional four-month continuance because of the size and complexity of the case. He indicated that Mallory's counsel did not oppose the request. In a

15

subsequent hearing, all defendants indicated their agreement with the motion. Thus, the district court granted the continuance. Milan and Evans subsequently pled guilty.

Just days before the trial began, after being surprised to discover that the government was going to offer expert testimony, Mallory requested a third continuance for the purpose of procuring his own expert. The district court granted him an additional two weeks to obtain an expert.

From our review of the record, it is evident that the district court granted the three requested continuances based upon a contemporaneous balancing of the required factors, including a finding that Mallory's counsel needed additional time to prepare Mallory's defense, and in utmost consideration of the extent to which the continuances were needed to serve the interests of justice. Furthermore, the district court abided by the requirement that it state its findings on the record by the time it ruled on the defendant's motion to dismiss. In denying the motion to dismiss, the district court stated the following:

> [T]o be clear, the continuances granted were, in fact, reasonably necessary . . . to serve the ends of justice, and these ends outweighed the interest of the public and Mr. Mallory in a speedy trial. This was particularly true in light of the complex nature of this fraud conspiracy case, the fact that there were three defendants with potentially conflicting defenses, the significant amount of electronic evidence in issue, and the fact that Mr. Milan had only a single court-appointed lawyer. Thus, the factors required for a continuance under § 3161(h)(7)

16

were clearly satisfied and the continuances were granted for this reason.

United States v. Mallory, No. 1:09cr228, 2010 WL 1039831, at *3 (E.D. Va. Mar. 19, 2010). Accordingly, we find no error.


                              VI.

Next, Mallory avows that venue was improper in the Eastern District of Virginia because his office was in Maryland and all of the acts that he allegedly committed in furtherance of the conspiracy occurred in Maryland. He also argues that the issue is not waived.

The prosecution must establish venue by a preponderance of the evidence, and we review de novo the district court's decision as to venue. United States v. Newsom, 9 F.3d 337, 338 (4th Cir. 1993). Venue is proper "in [any] district where the offense was committed." Fed. R. Crim. P. 18. "If an objection to venue is not raised in the district court, the issue is waived on appeal. A defendant, however, does not waive his venue objection by failing to file a written pleading." United States v. Stewart, 256 F.3d 231, 238 (4th Cir. 2001) (citations omitted). As the Stewart court recognized, there are two purposes of the contemporaneous objection rule: (1) to preserve judicial resources by making sure that the district court has the opportunity to avoid errors that, if uncorrected, might

17

require a retrial, and (2) "to prevent counsel from '"sandbagging" the courts by withholding a valid objection from the trial court . . . to obtain a new trial when the error is recognized on appeal.'" Id. at 239 (quoting United States v. David, 83 F.3d 638, 645 (4th Cir. 1996)).

If Mallory's venue claim is waived, we need not reach the merits of the issue. Thus we first consider whether the argument is waived. In contending that his venue argument is not waived, Mallory cites to language in Stewart where we made clear that "[b]ecause proper venue is a constitutional right, waivers of venue rights through failure to object should not readily be inferred." Id. at 238. Thus, "ambiguity as to the defendant's intent to waive venue should be interpreted in favor of the defendant, in light of the constitutional underpinning of the defendant's right to proper venue." Id. at 239.

In Stewart, we found the defendant had raised a venue objection even though he did not file a written motion. Id. at 238. During oral argument of Stewart's co-defendant's written motion challenging venue, Stewart indicated "that he was in a similar position." Id. at 239. On appeal, the government acknowledged that it had understood he was challenging venue and, accordingly, had argued venue was proper as to both Stewart and the co-defendant. Id. This, we found, was sufficient to permit the district court to rule on Stewart's venue challenge

18

and to preserve the issue for appeal. Id. Based on this case, Mallory argues he preserved the issue despite failing to move formally to challenge venue.

But, the facts in Stewart are easily distinguishable from those presented by Mallory. First, there was no motion regarding venue filed by any defendant in the case at bar, whereas in Stewart there was. But this, as noted above, is not dispositive. There is also no indication that either the government or the district court knew that Mallory was making a venue challenge. Thus, the district court was not presented with an opportunity to rule upon any venue issue. Nevertheless, Mallory invites us to infer from his Crawford arguments, and questioning concerning the FedEx tracking bill and the Rule 902(11) certificate, that he raised the issue of where the charged criminal acts occurred and thereby made a venue challenge. We must decline the invitation. Simply put, the inference is too tenuous. Hence, we hold that this issue was waived. Accordingly, we need not reach the merits of Mallory's venue claim.

VII.

Finally, Mallory contends that the district court erred in finding that the loss of the entire unpaid principal of mortgage loans was reasonably foreseeable to him in light of the collapse

19

of the housing market.  Mallory is unable to prevail on this issue.

In a fraud case such as this one, the government is required to establish the amount of loss for sentencing purposes by a preponderance of the evidence.  United States v. Pierce, 409 F.3d 228, 234 (4th Cir. 2005).  We review the amount of loss, to the extent that it is a factual matter, for clear error.  United States v. West, 2 F.3d 66, 71 (4th Cir. 1993).  This deferential standard of review allows reversal only if we are "left with the definite and firm conviction that a mistake has been committed."  United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)) (internal quotation marks omitted).

In sentencing for conspiracy to commit wire fraud and mail fraud, the district court looks to U.S.S.G. § 2B1.1 and its application notes to calculate the loss caused by the defendant's criminal conduct and then increases the offense level accordingly.  U.S.S.G. § 2B1.1.  This calculation is a two-step process.  First, pursuant to Application Note 3(A)(i) of this Guideline, "'[a]ctual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense."  Id. cmt. n.3(A)(i).  Second, the district court credits against the loss "the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the

20

collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." Id. cmt. n.3(E)(ii).

Mallory takes issue with the second step of the district court's calculation because the court reduced the loss only by the actual amount recovered from the foreclosure sales. He maintains that the district court should have, instead, applied a larger set off amount because it was not foreseeable that the housing collapse would occur. This, according to Mallory, caused the amount that the victims were able to recover to be smaller than it otherwise would have been.

In support of this argument, prior to sentencing, Mallory submitted to the district court affidavits from appraisers stating what they thought the loss would have been but for the housing collapse and asserting that the collapse was not reasonably foreseeable.

Although the district court noted at sentencing that the sentence of 60 months' imprisonment would be the same even if it adopted Mallory's loss amount, the court rightly rejected Mallory's position. Simply put, the first step in calculating the loss has a foreseeability prong to it, but the second step does not. Accordingly, it is of no consequence that the housing collapse was not reasonably foreseeable to Mallory. He receives the benefit of what the victims recovered, not what they

foreseeably might have recovered. "To accept [Mallory's] argument would be to encourage would-be fraudsters to roll the dice on the chips of others, assuming all of the upside benefit and little of the downside risk." United States v. Turk, 626 F.3d 743, 750 (2d Cir. 2010). Because we decline to provide such encouragement, we reject Mallory's argument.

## VIII.

Wherefore, for the reasons stated above, Mallory's conviction and sentence are affirmed.

AFFIRMED

22