11-4080-cr(L)
*United States v. Nawaz, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of January, two thousand fourteen.

Present:
JON O. NEWMAN,
PETER W. HALL,
GERARD E. LYNCH,
*Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee,*

    v.                    Nos. 11-4080-cr(L), 11-4095-cr(CON),
                                    11-4309-cr(CON), 11-4427-cr(CON)

RAB NAWAZ, MORRIS I. OLMER,
MARSHALL ASMAR, WENDY WERNER,

        *Defendants–Appellants*;

DAVID AVIGDOR, NATHAN M. RUSSO,
REHAN QAMER, MOHAMMAD SALEEM,
SYED A. BABAR, a/k/a Ali, Asad,[1] THOMAS E.
GALLAGHER,

        *Defendants.*

_____

[1] Although originally listed as an alias for Rab Nawaz, the government indicated in its reply brief to Rab Nawaz's supplemental brief that Asad was in fact an alias for Syed Babar. The Clerk of the Court is requested to modify the official caption in this case to conform with the listing of the parties above.

1

FOR APPELLANTS:      Donna R. Newman, New York, NY, for Appellant Nawaz.

Jonathan I. Edelstein, Edelstein & Grossman, New York, NY, for Appellant Olmer.

Charles F. Willson, Nevins Law Group LLC, East Hartford, CT, for Appellant Werner.

Frank J. Riccio II, Bridgeport, CT, for Appellant Asmar.

FOR APPELLEE:        Eric J. Glover and Susan L. Wines, Assistant United States Attorneys, (Sandra S. Glover, Assistant United States Attorney (of counsel) *on the brief*) *for* Deirdre M. Daly, Acting United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Thompson, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**; except that we withhold determination of Defendant-Appellant Rab Nawaz's appeal of that portion of the district court's judgment requiring payment of restitution pending the Supreme Court's disposition of *United States v. Robers*, 698 F.3d 937 (7th Cir. 2013), *cert. granted*, 82 U.S.L.W. 3231 (U.S. Oct. 21, 2013) (No. 12-9012).

Defendants-Appellants Wendy Werner and Marshall Asmar appeal the district court's denial of their motions for judgments of acquittal and for new trials. Defendants-Appellants Nawaz, Morris Olmer, Werner and Asmar appeal their sentences and argue that the sentences were both procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**A. Werner and Asmar's Challenge to the Sufficiency of the Evidence**

Werner and Asmar contend that the evidence against them was insufficient to support their convictions. Both Werner and Asmar were convicted of conspiracy, in violation of 18 U.S.C. § 371, to engage in the charged mortgage fraud scheme. Werner was convicted of an additional count of mail fraud, in violation of 18 U.S.C. § 1341; Asmar was convicted of making false statements and committing wire fraud, in violation of 18 U.S.C. §§ 1001, 1343.

We review *de novo* the denial of a motion for judgment of acquittal under Fed. R. Crim. P. 29, viewing the evidence in the light most favorable to the government, "crediting every inference that the jury might have drawn in favor of the government, and recognizing that the government's evidence need not exclude every other possible hypothesis." *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Applying the well-known standards for analyzing challenges to conspiracy convictions, *see United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010), *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008), *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 113 (2d Cir. 2008), *United States v. Aleskerova*, 300 F.3d 286, 293 (2d Cir. 2002), *United States v. Gordon*, 987 F.2d 902, 906-07 (2d Cir. 1993), and construing the evidence in the light most favorable to the government, we hold that the evidence against Werner and Asmar was sufficient to sustain their convictions.

Werner argues that the evidence introduced against her failed to show that she had the requisite knowledge of the nature and extent of the conspiracy. In her case, however, the evidence showed that the sale of the Lake Street Properties had the "hallmarks" of the other sham sales involved in the scheme. As in the other transactions, Thomas Gallagher issued fraudulently inflated appraisals, Syed Babar received a consulting fee, Babar paid a straw buyer, and the mortgage loan company lost significant sums in the form of loan proceeds in connection with the sham sales. The evidence showed that Werner knew the properties were not worth the amount she received for their

sale. The evidence also indicated that, by failing to disclose payments to Babar on Form HUD-1 Settlement Statements, Werner concealed them from her own attorney and from lenders. Werner argues that the time lapse between the Lake Street sales and the other transactions involved in the conspiracy was too great to indicate that her sales were part of the conspiracy, but that time lapse was a matter of mere months in a conspiracy that lasted several years. The district court correctly determined that the evidence against Werner was sufficient for a rational juror to conclude that she had the requisite awareness of the general nature and extent of the conspiracy. *See Torres*, 604 F.3d at 65.

With regard to Asmar's argument that the proof against him was insufficient, the evidence indicated that he repeatedly worked with Babar and that other co-defendants knew of his involvement in the conspiracy. The evidence also showed that Asmar received proceeds from closings on his properties that were substantially less than what the lenders were told, thus indicating Asmar had paid co-conspirators from the proceeds of the sales. A number of witnesses also testified that Asmar was at the center of the conspiracy. In addition, there was evidence that Asmar was present at a number of closings and that he signed HUD-1 Settlement Statements that omitted important disclosures. There was even testimony from a tenant of one of the apartment buildings sold by Asmar that Asmar continued to collect rent from her family after Asmar had purportedly sold the building to a straw buyer. Finally, despite Asmar's claims that he did not know of Sheda Telle, one of the sham corporations used for the disbursement of proceeds, evidence showed that Asmar specifically authorized a portion of one of the sales proceeds to be disbursed to that company's account. In light of the evidence against him, a rational juror could conclude that he had

4

the requisite awareness of the purposes of the conspiracy and participated in it. *See Torres*, 604 F.3d at 65.[2]

Werner and Asmar argue that the district court should have granted their motions for new trials because of the lack of evidence against them and because they were prejudiced by the spillover effect of sitting through the trial of the other counts of the indictment in which they were not charged and the introduction of evidence regarding the conduct of the other co-defendants. We review the denial of a Rule 33 motion for a new trial for abuse of discretion. *United States v. Diaz*, 176 F.3d 52, 106 (2d Cir. 1999). "The test is whether it would be a manifest injustice to let the guilty verdict stand," *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007) (internal quotation marks omitted), or whether the district court "is convinced that the jury has reached a seriously erroneous result," *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (internal quotation marks omitted). Given the evidence against these defendants, we agree with the district court that there were no "extraordinary circumstances" warranting a new trial. The district court did not abuse its discretion in denying Werner and Asmar's Rule 33 motions.

### B. Nawaz, Olmer, Werner and Asmar's Challenges to their Respective Sentences

All four defendants contend that their sentences were both procedurally and substantively unreasonable on a number of grounds. Each defendant challenges the district court's loss calculation determination and its consideration and balancing of the factors set out in 18 U.S.C. § 3553(a). Werner and Asmar also challenge the special means enhancement applied to their respective sentences and the district court's failure to grant a minor role reduction. Finally, Olmer contends that he was entitled to a two-level sentence adjustment in light of his acceptance of responsibility and that the district court should not have imposed a special skills enhancement when

---

[2] To the extent that Werner and Asmar challenge the sufficiency of the evidence that supports their convictions on the other substantive counts, Werner and Asmar raise no new arguments specific to these counts. For the reasons stated above, any challenge to these counts on the aforementioned grounds lacks merit.

5

determining his sentence. We address each argument in turn and "review [the] district court's sentence for procedural and substantive reasonableness. . . . Pursuant to this standard, we review [the] district court's interpretation of the Sentencing Guidelines de novo and apply the clear error standard when evaluating [its] findings of fact." *United States v. Cavera*, 550 F.3d 180, 210 (2d Cir. 2008) (citations omitted) (en banc).

### 1. Loss Calculation

Nawaz, Olmer, Werner and Asmar contend that in calculating the appropriate loss the district court misapplied this Court's decision in *United States v. Turk*, 626 F.3d 743 (2d Cir. 2010) adopting the method of calculation described in *United States v. Mallory*, 709 F. Supp. 2d 455 (E.D. Va. 2010), *aff'd*, 461 F. App'x 352 (4th Cir. 2012). Specifically, they argue that the district court should have used the Connecticut Superior Court appraisal values for all properties instead of the considerably lower foreclosure sale prices at which the lenders sold certain properties. They contend, moreover, that the foreclosure sale prices were "nominal" and indicative of "dumping" on the part of the lenders.

"In calculating the amount of loss under the Guidelines, a sentencing court 'need only make a reasonable estimate of the loss.'" *United States v. Rigas*, 583 F.3d 108, 120 (2d Cir. 2009) (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)); *see also United States v. Bryant*, 128 F.3d 74, 75 (2d Cir. 1997) ("[T]he Guidelines do not require that the sentencing court calculate the amount of loss with certainty or precision."). Thus, we "must determine [ ] whether the [sentencing] court's method of calculating the amount of loss was legally acceptable." *United States v. Rutkoske*, 506 F.3d 170, 178 (2d Cir. 2007) (internal quotation marks omitted).

Under the Guidelines, the "General Rule" is that "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense, [while] '[i]ntended loss' (I) means the pecuniary harm

6

that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1 cmt. n.3(A)(i),(ii). The loss amount shall be reduced by certain "credits against loss," defined, "in a case involving collateral pledged or otherwise provided by the defendant," as "the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." U.S.S.G. § 2B1.1 cmt. n.3(E)(ii). To determine actual loss under U.S.S.G. § 2B1.1, this court has adopted the two-step process used in *Mallory*. *See Turk*, 626 F.3d at 749-50. First, the sentencing court must determine "the foreseeable pecuniary harm resulting from the fraud, and second, [it must apply] any credits against loss from sale of the collateral, as required by Application Note 3(E)(ii)." *Id.* at 749. This calculation is made as of the time of sentencing, and "the only loss that need have been foreseeable to the defendant is the loss of the unpaid principal." *Id.*

We have held that where mortgage fraud is concerned, "the item of value lost by [the] victims [is] the unpaid principal of the loans, not the buildings themselves." *Id.* at 751. Additionally, we stated that "loss shall be reduced by the amount the victim has recovered *at the time of sentencing* from disposition of the collateral." *Id.* at 750 (emphasis in original; alterations omitted); *see also* U.S.S.G. § 2B1.1 cmt. n.3(E)(ii). Recently, we have accepted as reasonable estimates of loss the use of short-sale prices, where they were negotiated, not fraudulent, and where the "evidence showed that the appraisals at the time of the fraudulent mortgages may not have been reliable." *United States v. Lacey*, 699 F.3d 710, 720 (2d Cir. 2012). Having reviewed the record in light of these principles, we conclude that the district court used an acceptable method of calculating loss when it credited against loss the appraisal values of properties that had not been sold at the time of sentencing and

7

the foreclosure sale values of the properties that had been sold.[3]  We disagree with the defendants that the foreclosure sale values were nominal.  The district court did not err by using them in its loss calculation formula.

In his supplemental brief, Nawaz asserts that the district court erred by including the loss associated with five properties[4] in its loss calculation as there was a lack of evidence "to support a finding that [he] was directly involved in these transaction[s] or that the fraud involved was within the conspiratorial agreement or that he had knowledge of the transactions or that the transactions were reasonably foreseeable to him."  Nawaz, however, did not object to the inclusion of these transactions in his Pre-Sentence Report ("PSR"), nor did he object to the district court's consideration of them at sentencing.  We therefore review the district court's decision for plain error.  *See United States v. Villafuerte*, 502 F.3d 204, 207 (2d Cir. 2007).  "A finding of plain error requires (1) error, (2) that is plain, and (3) that affects the defendant's substantial rights."  *United States v. Gomez*, 580 F.3d 94, 100 (2d Cir. 2009) (internal quotation marks omitted).

There is extensive evidence in the record concerning Nawaz's work to further the mortgage fraud scheme as a whole.  Nawaz was intimately involved in the sale to straw buyers of a number of properties and was one of Babar's close partners.  The record evidence supports the conclusion that Nawaz assumed an active role in the conspiracy by using his own and his wife's personal bank

---

[3] *United States v. Boccagna*, 450 F.3d 107 (2d Cir. 2006), is not to the contrary.  In *Boccagna*, the defendant fraudulently obtained loans by making false statements to a federally insured lending institution in violation of 18 U.S.C. § 1014.  In *Boccagna*, the Court was addressing the proper calculation of restitution under the Mandatory Victims Restitution Act ("MVRA"), rather than the calculation of loss under § 2B1.1 of the sentencing guidelines.  Unlike the MVRA, the sentencing guidelines expressly contemplate the use of returned collateral to offset the loss amount, and instruct the district court to reduce the loss amount by "the amount the victim has recovered at the time of sentencing from disposition of the collateral or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing."  U.S.S.G. § 2B.1.1 cmt. n. 3(c)(ii).  That is precisely how the district court calculated the loss amounts here.  Moreover, in *Boccagna* HUD had concededly charged merely *nominal* prices, and had made no effort to obtain a market price, for understandable reasons of its own; here, the district court found that the prices received represented a reasonable return obtained in an arm's-length transaction.

[4] Three of the properties were purchased by Perkins as a straw buyer in 2007, namely: 104 Walnut Street, Willimantic, Connecticut (loss $194,100), 80 Hillside Avenue, Meriden, Connecticut (loss $157,000), and 110 Walnut Street, Willimantic, Connecticut (loss $145,500).  The remaining properties were purchased by another straw buyer in 2008: 173 Beaver Street, New Britain, Connecticut (loss $140,000) and 281 Crown Street, Meriden, Connecticut (loss $151,000).

8

accounts to facilitate deposits of fraudulent proceeds and their distribution to co-conspirators. Nawaz also provided his own home as a base for a sham company called Global Home Painting, thereby ensuring that the conspiracy had a real address and telephone number to back up its false claims of employment for straw buyers. Recorded conversations between Nawaz and Perkins substantiate his role as a co-conspirator involved in the details of the scheme and aware of the use of Sheda Tell as a shell company to further the scheme. One of the recorded conversations shows Nawaz's attempts at concealing or minimizing his role in the conspiracy by instructing Perkins to deny Nawaz's involvement with Global Home Painting and his multiple interactions with Perkins. Nawaz also met with Perkins at Babar's instruction, when Babar was incarcerated, to ask Perkins not to talk to the authorities. In light of Nawaz's extensive involvement in the conspiracy and the fact that a defendant is liable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," U.S.S.G. § 1B1.3(a)(1)(B), the district court did not err, much less plainly err, by including the five properties in question in its loss calculation with respect to Nawaz's sentence.

Olmer challenges the district court's reliance on Zillow.com's estimates and what he asserts was an arbitrary estimate advocated by the government in determining the loss calculation in his case. Olmer's argument is unavailing because, even excluding the challenged properties from the loss calculation used in determining Olmer's sentencing guideline, his loss amount would still far exceed the $1,000,000 under U.S.S.G. § 2B1.1(b)(1)(I) that the district court applied. As a result, there was no error, much less plain error, that resulted from calculating the loss amount applicable to Olmer's sentence.

### 2. Sophisticated Means Enhancement

Werner and Asmar contend that the district court erred in applying a sophisticated means enhancement in determining their sentences. We review *de novo* a defendant's challenge of the

9

application of the sophisticated means enhancement. *United States v. Hasan*, 586 F.3d 161, 168 (2d Cir. 2009). Sophisticated means is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n.9(B). The record reflects that Werner and Asmar engaged in a scheme that involved forged bank documents, fraudulent property appraisals, fictitious entities, straw buyers and corporate shells used to perpetrate fraudulent mortgage transactions. The district court did not err when it applied a sophisticated means enhancement in determining Werner and Asmar's sentences. *See, e.g.*, *United States v. Amico*, 416 F.3d 163, 169 (2d Cir. 2005) (affirming a sophisticated means enhancement where the mortgage fraud scheme "involved sophisticated means designed to prevent detection . . . includ[ing *inter alia*] the creation of false bank documents; the solicitation and creation of false appraisals; . . . [and] collusion with the attorney representing many of the purchasers at closing.").

### 3. Minor Role Reduction

Werner and Asmar also contend that the district court should have departed from the Guidelines in recognition of their minor role in the conspiracy. "It is the defendant's burden to establish by a preponderance of the evidence that his level of culpability entitles him to a minor role reduction." *United States v. Garcia*, 920 F.2d 153, 156 (2d Cir. 1990) (per curiam). A minor role reduction "will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' or 'minimal' as compared to the average participant in such a crime." *United States v. Carpenter*, 252 F.3d 230, 235 (2d Cir. 2001) (internal quotation marks omitted). The facts in the record demonstrate that neither Werner nor Asmar played minor roles in the conspiracy. They were both involved in fraudulent transactions and provided fraudulent information to the lenders. They were both aware of the scheme and each benefitted from it. Werner and Asmar failed to meet their "burden to establish by a preponderance of the evidence that [their] level of culpability entitle[d them] to a minor role

10

reduction," and the district court's "findings [in this regard] neither lacked record support nor were clearly erroneous." *Garcia*, 920 F.2d at 156.

### 4. Acceptance of Responsibility Adjustment

Olmer argues that because the district court allowed him the opportunity to take responsibility for his crimes, which he took advantage of, the district court should have afforded him a two-level downward adjustment under U.S.S.G. § 3E1.1. We disagree. Section 3E1.1(a) of the Sentencing Guidelines provides a two-level reduction if "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The commentary explains that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse," unless the defendant "goes to trial to assert and preserve issues that do not relate to factual guilt." U.S.S.G. § 3E1.1 cmt. n.2. "Since the sentencing judge is in a much better position to make the factual assessment of contrition and candor than is an appellate court, the finding of whether the defendant has adequately demonstrated an acceptance of responsibility will not be disturbed unless it is without foundation." *United States v. Rivera*, 96 F.3d 41, 43 (2d Cir. 1996) (citation omitted).

In this case, Olmer accepted responsibility for his crimes after a jury verdict was entered against him. He does not argue that he went to trial to assert and preserve issues unrelated to factual guilt, nor do such issues appear to exist. Moreover, neither Olmer nor his counsel requested a two-level reduction on the basis of his acceptance of guilt, and the district court adopted the findings of fact in Olmer's PSR prior to his purporting to accept responsibility for his crimes. Section 3E1.1(a), therefore, does not provide a basis on which to award a two-level sentence reduction. To the extent that Olmer accepted responsibility after his conviction, the district court exercised its discretion in considering it and then imposing a below guideline sentence.

11

5.  Special Skills Enhancement

Olmer argues the court erred procedurally in applying a special skills enhancement on account of his legal training, asserting that he acted only as a notary and that he could not practice law as he had been disbarred. He also maintains that the district court sentenced him under the misimpression that he acted as an attorney. We review for clear error a district court's "determination of whether a defendant utilized . . . special skill[s] in a manner that significantly facilitated the commission or concealment of" an offense. *United States v. Thorn*, 446 F.3d 378, 388 (2d Cir. 2006). Because Olmer failed to object to the special skills enhancement before the district court, however, we review the court's application of that enhancement for plain error, *see Thomas*, 274 F.3d at 660, and we find none here.

During sentencing, the district court acknowledged Olmer's status as a disbarred attorney, but stated it could neither ignore his role in the scheme nor that he had formerly been a practicing attorney. The district court was justified in imposing a two-level enhancement because the evidence indicated that Olmer "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Specifically, although he had been disbarred, Olmer held himself out to be an attorney, and he did so even after he was indicted. During the scheme, moreover, he essentially acted as a closing attorney for at least fourteen of the fraudulent transactions. The record reflects that Olmer worked in a law office and used its IOLTA accounts. Additionally, he used his expertise as a former lawyer to counsel his co-conspirators on how to handle inquiries by lenders that could disrupt the scheme. The district court did not err, nor plainly err, in applying a special skills enhancement in calculating Olmer's sentence.

12

6. Section 3553(a) factors

Nawaz contends that the district court did not adequately consider several factors under 18 U.S.C. § 3553(a) and failed to recognize its authority to impose a non-Guidelines sentence under *United States v. Booker*, 543 U.S. 220 (2005). Specifically, Nawaz argues that the district court failed to consider his arguments relating to loss calculations for the purpose of a departure or variance and did not consider his family circumstances, his expression of remorse and admission of wrongdoing, his naiveté and his contributions to the community. Nawaz also contends that in sentencing him, the district court placed unreasonable weight on the need to promote respect for the law when considering Nawaz's obstruction of justice. "Failure to consider the § 3553(a) factors constitutes procedural error." *United States v. Wagner-Dano*, 679 F.3d 83, 88-89 (2d Cir. 2012). We have previously recognized that "we will not substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case." *Cavera*, 550 F.3d at 189. We have also held that a sentencing "judge need not utter 'robotic incantations' repeating each factor that motivates a sentence." *United States v. Corsey*, 723 F.3d 366, 374 (2d Cir. 2013). The judge must, however, "explain enough about the sentence for a reviewing court both to understand it and to assure itself that the judge considered the principles enunciated in federal statutes and the Guidelines." *Id.*

At Nawaz's sentencing the district court recognized and considered the factors on which the sentence could be based. The district court specifically and repeatedly referred to the § 3553(a) factors throughout the sentencing hearing. It is also apparent from that court's careful consideration of the Section 3553(a) factors and Nawaz's arguments that it was aware that it could impose a below Guidelines sentence but instead chose not to. The argument that the district court committed procedural error in assessing the relevant considerations under § 3553(a) is without merit.

13

Similarly, the district court did not commit any substantive error. In reviewing a sentence for substantive reasonableness, this court will vacate a sentence "when [the district court's] decision cannot be located within the range of permissible decisions or is based on a clearly erroneous factual finding or an error of law." *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007) (internal quotation marks omitted). We do not presume that a within-guidelines sentence is reasonable, but "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *See Wagner-Dano*, 679 F.3d at 95. Here, there was no error. Nawaz's sentence of 90 months imprisonment falls well within the advisory guidelines range of 87 to 108 months' imprisonment noted in his PSR, and is reasonable under the circumstances of his case.

Werner, Asmar, and Olmer also argue that the sentences imposed by the district court in their respective cases were substantially unreasonable. Werner contends that her contributions to the community, her age and the fact that, as a citizen of Australia, she is subject to deportation warranted a below guidelines sentence and that the court did not give enough weight to these factors. Asmar argues that his character witnesses, his well-spoken remarks during sentencing, his lack of a criminal record, and his contributions to the community also warranted a lower sentence. The record reflects, however, that in both Werner and Asmar's cases, the district court took these factors into consideration when it conducted its analysis under Section 3553(a). The district court determined that despite these factors, Werner was not entitled to a below guidelines sentence due to evidence concerning her involvement in another mortgage fraud scheme introduced at sentencing. Her sentencing guidelines range was 46 to 57 months' imprisonment, and the court imposed a sentence of 48 months' imprisonment. Although Asmar's initial advisory guidelines range was 57 to 75 months, the district court considered Werner's sentence, Asmar's involvement in two additional transactions, and the duration of his involvement in the conspiracy to reduce it to a range of 49 to

14

57 months. Using this new range, the district court imposed a guidelines sentence of 52 months' imprisonment. The district court's sentences are "located within the range of permissible decisions." *Cavera*, 550 F.3d at 191. Thus, Werner and Asmar's sentences are substantively reasonable.

Olmer argues that his sentence was unreasonably high in light of his age, medical condition, the punishment he suffered by being shamed and disgraced in the community, his acceptance of responsibility, and his blameless life prior to 2006 when he filed a false HUD and was forced to resign from the bar. Olmer's sentencing guidelines range was 70 to 87 months. The district court heard his testimony about his life and medical condition and considered all his other arguments. It then imposed a below guidelines sentence of 60 months' imprisonment. The district court's decision was certainly permissible, and there are no exceptional circumstances warranting this Court's intrusion into its determinations. *See Cavera*, 550 F.3d at 189. Olmer's sentence was substantively reasonable.

We have considered the Appellants' remaining arguments and find them to be without merit.

For the foregoing reasons, we **AFFIRM** the district court's denial of Werner and Asmar's Rule 29 and Rule 33 motions. We also **AFFIRM** the sentences imposed on each Appellant by the district court with the only exception being that we withhold determination of Nawaz's appeal of the district court's restitution order pending the Supreme Court's disposition of *United States v. Robers*, 698 F.3d 937 (7th Cir. 2013), *cert. granted*, 82 U.S.L.W. 3231 (U.S. Oct. 21, 2013) (No. 12-9012). The mandate shall issue in the normal course as to the affirmance of the convictions and sentences of all appellants, except that the mandate will be withheld pending further order of this Court, as to the order of restitution with respect to appellant Nawaz.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

15